May it please the court. The proceedings below violated Mr. Ductan's right to counsel in two respects. First, the magistrate judge was wrong to believe that he could punish Mr. Ductan for misconduct by forcing him to represent himself. And second, even if Mr. Ductan had validly chosen to represent himself, the district court committed an independent error by excluding him from the jury selection, which left him entirely unrepresented during that phase of the proceedings. I'd like to start with the second issue regarding jury selection. Controlling precedent both from this court and the Supreme Court provide clear guidance for the district court to handle the situation that arose in this case, which is where a pro se defendant begins to act disruptively in a manner that interferes with the orderly trial proceedings. In fact, the Supreme Court anticipated this very situation in the Feretta case itself, which is the case that initially recognized the right to self-representation. So if you look at note 46 in Feretta, the Supreme Court says that where a defendant engages in serious and obstructionist misconduct, the remedy is for the district court to revoke the right or terminate the right to self-representation and to appoint counsel to take over, even if the defendant objects to that procedure. That's exactly what this court affirmed in the case of the United States. You say it's structural error not to have him represented at jury selection. Absolutely, Your Honor. But we review that for plain error, don't we? Your Honor, first and foremost, our position is that the standard review does not matter in this case because you get to the same place either way. Did we have plain error review even for structural error? Yes, this court's precedent is clear on that. I believe it was Ramirez-Castillo last year reaffirmed that. All right. Why would we take note of this error under these facts? The reason you would take note of this error under these facts is, well, first of all, the government doesn't even make an argument on the third and fourth prongs of the plain error standard in their briefing. And I think the reason for that is if you look at the importance of jury selection to the criminal process, it's something that's widely been recognized as a critical and important issue. Your Honor, you just argued there's no plain error review. There is plain error review, and so I'm asking about the fourth factor. Why would we take notice of it under these facts where he really got – by the way, has he ever been tested for competency? Is this man – when I read all this, I wondered, is that a question at play? Is he ever – is that even in this case? Well, we weren't involved at that time. I'm asking, is it in the case? As far as I know, no. Okay. Let's go back to the circumstance. He absences himself by his conduct. When he's out of the courtroom, it's continued comment about he's a secured creditor and all that. It has nothing to do with the procedure. When he has standby counsel, who I admit, very limited in what standby counsel does, but at least is there in the courtroom, at least has come up to at least one bench conference. The court takes the step of protecting his interest by striking a juror. You know, Judge Seldom gets involved in doing that. And why would we notice error in this case? Your Honor, you would notice error in this case to protect the integrity of judicial proceedings as a whole in the public mind. And so it's not just to protect Mr. Ducton's rights by themselves, but to protect the integrity of the process as a whole. Is there really any challenge to his guilt in this case? Well, that's something that having not been involved and having not had counsel. I'm asking you, is there any challenge to his guilt in this case? I think, Your Honor, that certainly we did not make a sufficiency of the evidence challenge. There's no doubt about that. I don't know what this case would have looked like if he'd been represented by counsel throughout. I know that, but that's a separate question. But the point is, I'll just answer it for you. I don't think there's any real challenge to his guilt in this case. And so why does the public think that this hadn't been a fair trial when the evidence clearly shows he's guilty, he was protected to some degree, albeit limited, but he was protected some, and he absented himself, really? Your Honor, I think it goes to the importance of the jury selection process in the criminal proceedings. Isn't your point that this is a structural error that doesn't require, it doesn't matter whether or not the defendant's guilt was established? I think that's exactly right. It doesn't matter whether he is, and while I can't concede that there is overwhelming evidence of his guilt, there is evidence in the record. That goes to the question of whether or not we notice it, too, doesn't it? Because the question is, does that sort of impugn the system on what happened in this case? I don't think it's not an absolute requirement, but why is it not a factor? I think it must be, don't you, a factor that we consider in the fourth issue on the plain error? I think that even if it's something that comes into your mind, it shouldn't change the result in this case. Let me ask you this, would it make a difference to you, what if it was clear to everybody that if this guy, for instance, the jury, was seated with a bunch of people who absolutely had no inclination to be fair with this man, and we knew that from their questionnaires, we knew that from the answers to questions, and we knew his guilt was close, it was close on proof of guilt, wouldn't that auger for or suggest that we should say this just can't happen? We don't have any of those factors in this case. That would certainly be a good fact. A stronger case. It would certainly be a stronger case, but I don't think the outcome is any different. Because if the evidence is so clear and if he is clearly guilty and no lawyer, no, he's entitled to a lawyer, he's not entitled to a magician, and so even if he is convicted on remand, that protects the integrity of these proceedings because then we remove any doubt from the public view about whether this proceeding was fair. Then aren't you arguing for an automatic reversal on the structural error? In effect, yes. I mean, it's hard to – But that's not the law, though. Well, no. To be clear, I'm not arguing that the court adopt a per se rule under the fourth prong. That's effectively what you're arguing. What I'm arguing is that it's very hard to imagine a set of facts in which an error of the denial of any counsel at all during a critical phase of the proceedings is something that does not so impugn the integrity of the overall judicial proceedings that remand would not be warranted. So you think that the precedent that we view structural error for plain error, that that is just really meaningless? No. It is this court's precedent and there are other courts that have perhaps went the other way to some degree, but I don't think it's meaningless. I know that because it's hard to imagine any circumstance. I'm not arguing with you. I'm just asking you because I'm asking the same questions of myself. Well, and to be clear, if we get to plain error and you reject the notion that his sort of general objections preserve this if they're liberally construed, which that is our first position is that his objections liberally construe and cover this. Assuming we get to plain error, that does include both the adds on the additional steps that the court has to go through, including whether the error is plain or not. Is it? And I think that that is clear because based on the Supreme Court's guidance. Can I say this? I haven't asked you about that. I've asked you about step four. Absolutely. Because I think it's my question is I think it's likely error, and I think that error is likely plain in the sense that it's established that it's error not to do it. But that takes us. It looks to me like plain error review and structural error cases really just defaults to that last position. Does that make sense to you what I'm saying? It does. In fact, I'm not aware of cases that have rejected a structural error, that have refused to remand a structural error on the fourth prong. It certainly is something that gets considered. And if you satisfy one and two, Ramirez-Casillo says that. Don't we have at least unpublished decisions in this circuit doing just that? There may be, but I'm not. If they're unpublished and I don't believe they were cited by the government, I'm not aware of them. And like I said, the government doesn't ask for the court to send this back or to reject sending this back under the fourth prong. And I take it. I don't know what my friend's position will be when he gets up here, but I think that the government itself has an interest in maintaining the integrity of the proceedings. And again, if this is remanded and he is convicted again and we end up in the same place. Do you think this is invited structural error? I do not think it's invited structural error. You don't think your client invited the error? I don't because he objected repeatedly to the way these proceedings were conducted. I know that, but I'm talking about the Jewish election. Yeah, he said he was a secured creditor and therefore he couldn't be tried. He said a lot of things he objected to generally, but he didn't say anything specifically about Jewish election and his conduct at Jewish election was that he really, the court could not continue. Do you agree that the court could not have continued with him acting the way he was at Jewish election? What the court could have done is, if you look at… I'm asking you that question. I agree that the court had to take some action to address the misconduct. Do you think the court was wrong in asking him to step out? I think the court was absolutely wrong in conducting jury selection in his absence. You have to answer my question, though. You just can't answer what you want to answer. Do you think the judge was wrong or acted improperly in asking him to step out? No, and Feretta provides exactly what the court should have done here. Well, why don't you let me finish my questions to you? Sure. Your argument is that although the judge was correct in excluding him under these circumstances, that you think there was a structural error, subject to even plain error review, that the court had to appoint counsel for him in that position. And under plain error, even under plain error review, that that fact alone is enough to impugn the integrity of the trial. Yes. I think that goes back to the Supreme Court's decision in 1894 in Poynter, which was— But it doesn't under plain error review. I think it does— Automatically. Automatically. Is there some case from the Supreme Court anywhere else that says this automatically is reversible, even under plain error review? There's no such case. Is there any case to the contrary? I don't think the Supreme Court has touched on that. The Supreme Court has certainly held that a— I know that, but you were saying that that had to be under—you started to cite a case. You were citing a case for that proposition, correct? Let me explain the reason I was citing that. That's why you were citing that, though, to make the point that it had to go back. The reason I'm citing the Poynter case from 1894 is to establish the central importance of jury selection in the criminal proceeding. Nobody's arguing that. Nobody's arguing that. But I think that dovetails with the fourth prong under which the court evaluates whether there is harm to the public integrity of the proceedings. I know that, but it takes us right back to the first point. Then are you arguing that the absence of a defendant without a lawyer is per se reversible? That's my question. You effectively are, aren't you? I agree. I'm effectively arguing that I have difficulty imagining a scenario in which a defendant is denied counsel during a critical phase of the proceedings, and that is not an error that this court should recognize under the fourth prong of the plain error test. I have very much difficulty imagining that scenario. Can I ask you about your other argument? Absolutely. Which was your first argument in your brief, but do I take it from the emphasis you put in putting the other argument first here, that you regard the argument that we've been talking about all morning as your stronger argument? I agree, Judge Motz, that the jury selection argument is the easier ground for this court to decide the issue. Now, I think that if you do, and certainly if you agree with us on jury selection, you don't need to resolve the initial waiver or forfeiture issue. If you do get to it, though, I think it's another situation where this court has provided clear guidance to the district courts to handle this common situation, and that's from the in-bank decision in fields and from Frazier et al. following that up. What those cases do is establish a default rule where when a defendant is either vacillating between a desire for self-representation and a desire to have counsel appointed, or he rejects all of the available options, which is what happened here, he didn't want – Actually, didn't he finally say, I'm going to get my own lawyer? Didn't he say that? Because didn't the judge say to him, if you get your lawyer, I will certainly entertain a motion for a continuous. But wasn't his last comment on that first issue, as you laid them out, that I'm going to get my own lawyer? It certainly was, but he failed. He was never able to do that. So you end up in a situation where he's rejected proceeding with self-representation. He's rejected appointed counsel, and he's rejected or been unable to retain counsel. So in that situation, what Frazier et al. and fields do is create a default rule for what does a district court do in the face of this kind of recalcitrant defendant. And the default rule is to mandate attorney representation because that not only protects the interest of the defendant, but it protects the interest of the public in a fair and accurate trial proceeding. And so that's – if the court does reach that issue, that is – Of course, if we reach that issue, we need not reach the other issue. Exactly. So I agree it's a one or the other. If you agree with us on one, you need not reach the other. So you're saying just give you one. Just give us one. Oh, he needs one. That's all we need. The government needs them both, but we just need one. Well, can I ask you about the first issue? What do you think our standard review is there? I think on the first issue, the standard review should be de novo. And I think the reason for that is twofold. First is that I think – You've never found a case where you'd like it to be plain error. I've had cases where I admit it's plain error, but I've never liked it. That was with respect to the second issue. With respect to the first issue, we have this case that everybody else here knows a lot about because they were on the pound to begin with. But you think that it's still an open issue in this circuit with the standard review? I do. I think Bernard is different because at the time the decision was made by the district court there, Mr. Bernard was represented by counsel still on that competency issue. So I think it's open for that reason. And I think the Erskine decision in the Ninth Circuit sets out the reasons why we think that this particular issue is one that should not ever be subject to a plain error standard. But again, I would make the same argument that even if we are in a plain error world, we satisfy all of the requirements here. Well, we have a little time in rebuttal. We'll hear what the government has to say. Mr. Miller? Good morning. Good morning. I'm a court of William Miller on behalf of the United States. The defendant in this case is not entitled to a new trial. The district court properly concluded that the defendant waived his right to court-appointed counsel through his words and his actions. Well, I thought the court, Judge Kahr, said he had not knowingly waived his right to court-appointed counsel.  And that's true after the first status of counsel hearing. But what this court teaches from the Singleton case and others is that in these issues of waiver, this court on review is to look at the whole record. And so that one snapshot moment... Isn't that a pretty good indicator of what was happening? It was a good indicator of what was happening at the first status of counsel hearing, but in this case... Did you point to anything in the record at any point in time where this defendant said, I want to represent myself? No. The defendant did not explicitly assert the right to self-representation. Isn't that required by our Fields decision? It's not required by the Fields decision. And I would point the court to the Gallup decision in cases... Well, Gallup's preceded Fields. Fields is an en banc case. So if, in fact, Fields has anything to do with this case, we look to Fields. But before the court dismisses with its prior precedent, it would require something more explicit than just this inferential tension. All right, so we've got this tension. So how do we resolve that? In this case, and to your point, Judge Diaz, for every Gallup case or Frazier-El case, there's one where the court came out the other way on this issue of implied conduct. So we've been less than consistent? No, I think what that shows is not a lack of consistency. It just shows how fact-specific these cases are. And in light of the fact that you have cases where, in certain instances, the district court's being affirmed where it found a waiver implied by conduct, and other cases, like Frazier-El, where the court's saying you were right to deny the right to self-representation, that just shows that these cases very much depend on the facts in the district court and that the district courts have latitude within the confines of the Sixth Amendment to address those specific situations. Well, I mean, it seems to me to the extent that there should be a default rule, the presumption should be that we should not leave a defendant to drift without a lawyer. And I think that's what our case law is. That is the default rule, and what that means is in the absence of some sort of waiver, the default is you get a lawyer. But he didn't say that he wanted to represent himself, ever. And, you know, he was difficult, to be sure, but he's not the most difficult person I've ever seen, maybe not even you in your youth have ever seen. So it seems a pretty extreme thing to do. The reason it's not an extreme thing to do is that on three occasions in the first status of counsel hearing, the defendant says, I don't want court-appointed counsel. He's shown by his actions that he won't even communicate with court-appointed counsel, and he refuses to sign the discovery agreement. There's a second status of counsel hearing where standby counsel is moving to withdraw, and the defendant once again says, I don't want a contract with the government in terms of counsel. Also what happened in that hearing is that the magistrate judge reiterates, well, you can hire a lawyer, but you need to do it quickly because the trial is coming up. Then at docket call, which is the third sort of critical moment here, the district judge recaps all of his options again and says, you can have standby counsel become your lawyer, you can hire a lawyer if he's here by the time of trial, you've had two months since you fired your last lawyer, or if neither of those things happen, you're going to go it alone. And so it's the combination of his words and actions that result in the implied waiver in this case. But I hear you and I appreciate the outline of the facts there, but as I had understood it when he was before the magistrate judge, the magistrate judge said, okay, you're going alone. So at that point he was going alone in the middle of this, and I know the district judge gave him a chance, but now he hadn't had a lawyer preparing things, right? He was there alone. Judge Motz, I agree. If that was all that happened in this case, the government very well may have conceded error. But in this case, you can't ignore the subsequent status of counsel hearing and the district court's representations at the docket call. It was clear from both of those events that the defendant's options were laid out for him, and he still had a chance to elevate his standby counsel to lawyer, which cuts against the fact that he had somehow forfeited that right. He was afforded the right to make Mr. Lee his lawyer all the way up until the end and then was actually given a lawyer for sentencing. Was there any indication that Judge Conrad was going to be willing to continue the case that he chose in that option? Judge Conrad said on the record that he would entertain a motion to continue if the defendant had hired a lawyer. That suggests to me going out and getting private counsel. That doesn't suggest to me if you take the standby counsel, which you are I think fairly characterizing to us was his alternative, there had been no preparation. I mean, would you ever go in and try a case that day when you're not prepared, when you hadn't been consulting with the client? I mean, I don't think that's a choice. No, of course you wouldn't. But here's what I would say to that, Judge Motz, is in this case the lack of preparation for standby counsel is caused by the defendant. He's refusing to sign the discovery agreement and preventing his lawyer from communicating with him or by reviewing the discovery. And so this is yet again another tactic by the defendant to essentially shield himself from prosecution in this case. So the lack of preparation can't accrue to his benefit because he's the one who caused it in this case. Well, I don't think I can square your argument with where our case law is on this. It seems to me that there has to be more obstreperous conduct. And I take your point about it, and it doesn't seem to me that he has any kind of good defense, but he didn't get in at all. And he never said he wanted to proceed alone. And the government's position on that is just that by adamantly refusing court-appointed counsel and then being presented his remaining two options, hire a lawyer before trial, or you're going to be going it alone if you've rejected able counsel, that that's the gallop decision that this case, this court has continued to follow in unpublished cases and in the Singleton case, which is one of the cases that the defendant said overturned it, actually cites gallop favorably. What was the defendant's last word on counsel? What was his last word? The defendant, post docket call, was continuing to seek a continuance to pursue retained counsel. That's what I thought. His last word to the court, as I remembered it, was I'm going to get my own lawyer. And I thought the court said, indicated, that you get a lawyer, let him ask for a continuance, and I'll certainly entertain it. And that's true. And I would just point out, going back to the timeline, that the defendant fired his retained lawyer the first time, two months prior to trial. I know that, but my question is in the analysis, what is the district court to make of the fact  who has a right to hire a lawyer, who has a right to have counsel appointed if he meets the criteria, says by his actions he's shown he's going to do it his way, and the last thing he tells the judge is I'm getting my own lawyer. What's the court supposed to do? You're a liar. I know you're not really going to get a lawyer. What's the court supposed to do? It was another tactic, and that's how Judge Conrad interpreted it as well, Judge Shedd. He said I interpret your request here as a motion to continue, and I deny it. And so that goes back to sort of the standard for this, which is plain error as well, because the defendant is really seeking, in the district court judge's estimation, a continuance to retain a lawyer rather than objecting. It's clear. This guy doesn't want the trial to proceed at all. He doesn't even think the whole thing's legitimate. He thinks he's a secured creditor or something. That's what I'm saying. He makes all kinds of claims about things, and the judge is just trying to move forward with the case. I think Judge Conrad was quite understanding myself in the way he dealt with it. Again, I go back when I was a district judge. I had people, and I had absent people from the courtroom too. Judge Shedd brought up this issue of the defendant's competence, which apparently was not an issue, not addressed at trial. But, I mean, there are cases, obviously, where a trial court can foist a counsel upon a defendant who may be competent to stand trial but not competent to represent himself, because the cases are clear that the right to self-representation is not unqualified if it would prove too disruptive to the order of the proceedings. Why doesn't that same rule apply in this context? It doesn't apply in this context because there was never any issue of competence. No, no, I understand that, but you've got the same kind of issues. You've got a defendant who, I imagine, if he had been... Well, as it turned out, I guess he wasn't all that disruptive. I think he was very competent. I mean, I disagree with Judge Shedd's characterization a little bit. All I was doing is what he said in the record. What being a secured creditor has to do with being tried, I don't know. There's a whole group of these people that benefit from the UCC who seem to the world are criminals. Right, much to everyone's... Somehow think that's going to be their way out. And I think in this case, the defendant did show that he understood exactly what the court was talking about. He actually was sort of flipped back and forth between the secured party nonsense and actually responding to the court's question. And then during trial, he represented himself fairly ably and had some themes to his cross-examination and closing argument. Except during jury selection when he wasn't allowed to represent himself at all. And that, to me, is the more troubling aspect of this case. So I think I'd ask you to turn your attention to that. Sure, and again, the standard there is plain error. And the reason that it's plain error... And it's not with the earlier argument, correct? The government maintains that it is plain error as to the prior argument as well, but that under either standard, the district court got it right, even under a de novo review, given the defendant's words and his conduct. The plain error standard review, although the government doesn't concede that this is a structural error, plain error is much more important on this second issue than on the first issue in the government's estimation. But plain error is the appropriate standard here because the two objections that the defendant pointed to, first is in the context of, government, do you have proof of claim? Government, do you have proof of claim? It has nothing to do with jury or jury selection. The second objection that the defendant highlights is when the defendants returned to the courtroom and Judge Shedd, to our earlier conversation, that was about the continuance to retain counsel. And so at no point in this record did the defendant object to the jury or to the jury selection process. He made his objections clear to the entire proceedings, but I don't know that that's enough. And that's not the specificity required because had he objected specifically, it would have allowed the district court to articulate his reasons better and would have highlighted that error to the court. So let's explain error. So why isn't this just such a breakdown in the adversarial process to have the defendant away outside of the courtroom watching jury selection removed from the proceedings and the government and the trial judge and standby counsel operating unfettered? Standby counsel was not allowed or didn't volunteer any challenges for inquiry or otherwise. Don't we have essentially a kangaroo court here? I mean... We don't have a kangaroo court because of the presence of standby counsel. But he wasn't doing anything. And I don't think that the court can infer from that that he wasn't representing anything. He wasn't asked about any challenges. Judge Conrad asked the government whether or not they had any challenges. He never once turned to Mr. Lee and asked that same question. That's certainly from the record he never addressed Mr. Lee directly. He did speak to the attorneys in the plural and sort of addressed the court more broadly. And it's also... First of all, he never said, oh, by the way, Mr. Lee, in your client's, well, it wasn't his client, but in this defendant's absence, you're it. It's your turn to take on this jury selection process. He never said that, right? He did not say that. And I think that's another reason why plain error is important here. Because the defendant failed to object, that's an ambiguity in the record. And under plain error view, it's up to the defendant to show that there is a plain error. But why is it ambiguous? Standby counsel has been defined in our case law. They're not there to represent the defendant. They're simply there to act as an advisor. There's nothing ambiguous about that. Well, standby counsel's there to be on standby for contingencies. To consult. But they're separated. They can't consult. The second part, as I understand it, of standby counsel is... As I understand the argument you just made, had there been an objection as he was absented, then the court would have been in a position to say, you were standby counsel, get off the bench. You're first team. Stand in. Correct. Or if, when he came back in, he objected to what had just happened, the court could have said, wait, wait, wait, stop. Strike that jury. We're going to start again. A court could do that. And by the way, I don't think this is anything close to anything close to a kangaroo court. Not when you see what all was allowed to this man. I don't know. Did the judge... Could the judge have done something different? Maybe. But I don't see, when you read this record about judge... Both the judges, the magistrate judge and the district judge, I mean, they were trying to accommodate what to do. Maybe they should have known. It was a structural error, and they had to appoint somebody. But actually, isn't it true the district court injected itself into the Jewish election and struck somebody? That is correct, Your Honor. And I think that the other thing not to lose sight of is that Judge Conrad was really careful to put on the record that the defendant is able to monitor these proceedings in real time. And let me be clear. I don't mean to criticize Judge Conrad or Judge Kerr. And when I mention kangaroo court, it's just because I'm troubled by the notion that a defendant who invited this situation by his antics, there's no question about it. But nonetheless, I think the trial judge has a responsibility to ensure that the process works. And I'm not sure that the process worked in this case, at least with respect to Jewish election. In order to reverse, it would have to be plainly erroneous, however. And I think that's where the standard of review comes in and is important. And I may have put the emphasis on the wrong syllable in my brief, but I do think that those third and fourth prongs are important in this case, and that things like the overwhelming evidence... Do you think... Could you concede that this is error? Could you concede that it's even an error that he should have known, in the more narrow sense, it's plain, but that the case would still not be reversed? Because you'd have to look at the other factors, especially that fourth factor. I'm still... Listen, I can't remember what you said in your brief. I've just been cogitating over this case, trying to figure out what do we do with it, because you have issues on both sides, in my opinion. But why would we notice this under the plain error review standard, under the facts of this case? The government can and should still prevail, even if the court decides there's error here and that the error is plain. And the reason for that is because... It's a little confusing when we say we have plain error review, yet step two is that the error is plain. But that doesn't get you to a reversal under plain error review. You still have other factors. Right, it's the defendant's burden to satisfy all of those. Why in this case wouldn't we just send the case back? We wouldn't send the case back because the defendant's conduct in this case... When I think of the fourth prong, and I think this is supported by the case law, is how would the common man view this? Or does this call into question the integrity of the proceedings, is the official language? And that's why I'm not so sure I understand how you can rely so heavily on the fourth prong because I think the common man would think that if you're tried by a jury, you're entitled to be there for the jury's selection. I mean, that doesn't seem such an arcane point. Or have someone there... And I agree. And there were procedures in place, we've talked about that, but the other relevant factors here are, and I think it is appropriate to consider in the fourth prong, is overwhelming evidence of guilt and the defendant's conduct. This defendant interrupted the district court more than a dozen times in quick succession. In the defendant's brief, they pointed out that, well, he wasn't given enough warnings. The only reason he wasn't given enough warnings is because he wouldn't let the district court talk. And so I think when the court's being held hostage like that, it doesn't call into question the integrity of the proceedings to absent the defendant, which, as the district court pointed out, was really the defendant's choice in this case based on his conduct. And then to put procedures in place, stand by counsel, monitoring in real time, to ensure that he does have some Sixth Amendment protection. And I'd also point to the Supreme Court's case in Allen, which really goes to the issue of removal from the court, and that's more of a confrontation clause case. But that case does say that district courts have discretion to handle these types of situations, and I think that's important throughout this case on both of these issues. The defendant attempted to bring the proceedings to a halt and shield himself from prosecution through these types of tactics and antics. And the district court was appropriate and measured, and its rulings complied with this court's precedent and the Constitution. And so unless the court has other questions, I'll end there and ask that the court affirm the judgment of the district court in this case. Thank you, Mr. Miller. Carpenter, you have a rebuttal? So I'd like to start with the fourth prong issue that we've been talking about. And I think the reason to notice, there are two cases this court has decided, I think, shed some light on why reversal is warranted under the fourth prong. The first is James v. Harrison, which says that an absence of counsel during jury selection would be a breakdown in the adversarial process and that the court would presume prejudice. So I think the analysis there is helpful. And also I'd point the court to United States v. Hanno, which we cite in our reply brief. It's 21F3rd42. Well, if there's a structural error, isn't prejudice presumed? Under the third prong, yes. All they're saying is there's a structural error. Nobody disagrees. But I think the analysis in James is a little more enlightening than that because the reason that prejudice is presumed is that there is a breakdown in the adversarial process. And when there is a breakdown in the adversarial process, that casts doubt on the integrity of the proceedings. So I think that it loops into the fourth prong as well. Even if the breakdown is the result of the defendant's misconduct? Absolutely. And there's no doubt. No one disputes the Illinois v. Allen point that the judge could have, should have, needed to remedy this situation by calming him down and getting him out of the courtroom. What the judge needed to do was one of two things, either appoint counsel to take over or throw him in the holding cell, hold him in contempt, and then bring him back later and say, I'm going to give you one last chance to represent yourself if you behave. But I would point to United States v. Hano. Again, we cited it in the reply brief, which says what happened there is the judge conducted a portion of the jury selection proceedings without notice to the defendant and without any participation by the defendant or his counsel. And what this court said at page 49 is that conducting those proceedings, the removal of jurors without notice to the defendant and the absence of the defendant and his counsel, impacts on the fairness, integrity, and public reputation of judicial proceedings to warrant reversal under plain error review. Yeah, it might be under those facts. You have to, under the fourth point, you have to look, it's very fact-specific. I've read that case. They don't, that case doesn't control there. It just suggests what we do, and we just have to look at the facts and decide if it meets that, if it meets that. Well, and I think that the court, the case does a little more than that. I think it is very insightful on the importance of this, and this court has always... The importance of what? The importance of jury selection in the proceedings. I know that, but all that makes it, is that makes it error, and that makes it clear error. Well, and I think that Hano did, though, under plain error review, find the third and fourth prongs to be satisfied, and I think the analysis in Hano is still controlling now. Again, it is always a fact-by-fact, case-by-case determination, but I don't think there's anything meaningfully distinct in the facts there versus here that would go to the fourth prong, because I think the insight there from Hano is consistent. Because you think there is no... You can't even fathom a circumstance when it wouldn't have to be absolutely reversed. I do, as I said. I have trouble envisioning a scenario where a key portion of the proceedings occurs without any representation for purposes of the Sixth Amendment. No, you know, no self-representation. Would that argument apply to the trial itself? If somebody's pro se, and he's absent, and the court forces him out, or he absents himself because of his conduct, would that then have to be reversed? During the trial itself? Yes, sir. That's exactly what happened in the Mack decision in the Ninth Circuit. What do you think would it have to be? I think, again, I can't envision a scenario where a significant portion of the trial proceedings occurs... We have unpublished decisions in this circuit that say that's not error. Well, and that is unpublished and not binding on this panel. No, I know it's not. I know what unpublished means. Of course. So, if there are no additional questions on this part, I would turn back to the first issue for just a moment. One of the points that the government makes is about the subsequent hearings after the magistrate judge's initial finding of a non-knowing, non-intelligent waiver. I think the reason none of those subsequent hearings, as we point out in the reply brief, get the government where it needs to go here is twofold. First is that there is no open court exploration of the defendant's background and capabilities on the record during any of those things. And, in fact, if that had happened, I think the court would have found him incompetent to represent himself because he was spouting all of these secured creditor nonsense. I think that the record makes clear that he wouldn't have satisfied that requirement. Well, now, wait a second. Now, there are people who believe in nullification, too, and they'll stand up and go, I don't care what the law is. The jury has the absolute right under the Constitution, the founding fathers' views, to nullify and they can decide what the law is. I've had those people before. They aren't incompetent. By the way, they may be wrong. They may be wrong. But that doesn't make them. In fact, I think that's the reason they're striking from jury selection because you say, if a juror feels that way, we follow the law, and they'll go, absolutely, we won't do it. But that doesn't mean they're incompetent, though. Well, perhaps if the court had engaged in an open court exploration of his background and found him competent, then we would have a different issue. But the court did observe him. I don't think it went quite far enough. But even setting that one aside for the moment, the other problem for the government is that at no point in the remainder of the proceedings was there a clear and unequivocal request to proceed. Let me ask you. Have you ever been in a court proceeding where somebody was, at some point, a judge to be incompetent? I'm just asking. I'm not trying to criticize you. I think, personally, the answer is no. I'll just tell you from experience, it's generally obvious. Right. Then you would say, you've got to be tested or somebody has to be tested. But it's not somebody spouting some odd theory of the Constitution normally. And so setting that aside then for the moment, the other issue for the government is that there is never, in any of these subsequent proceedings, a clear and unequivocal request to proceed with self-representation. In fact, Judge Shedd, as you pointed out, the way this was left was, I want to hire my own counsel. And that's about as far from a clear and unequivocal statement of, I want to represent myself as you can be. So that requirement under Fields and Frazier-El is also not satisfied. I thank the court for its time. Thank you very much, Mr. Carpenter.
judges: Diana Gribbon Motz, Dennis W. Shedd, Albert Diaz